ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 1 8 2011

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

JAMES F. DINWIDDIE, JR.,             )
                                      )
        Plaintiff,                    )
                                      )
                                      )   CIVIL ACTION
V.                                    )   NO.: 1:10-cv-03516-RLV-ECS
                                      )
LEXISNEXIS RISK SOLUTIONS INC.,       )
                                      )
        Defendant.                    )

## PLAINTIFF'S VERIFIED MOTION FOR SUMMARY JUDGMENT

Now comes the Plaintiff, James F. Dinwiddie, Jr., pro se, and respectfully moves for summary judgment.

### Statement of Material Facts

1. On or about 8/16/10 Travelers Insurance Companies (Travelers) used information contained in a consumer credit report provided to them by Choicepoint Inc. (Choicepoint), a Consumer Reporting Agency (CRA) as defined by the Fair Credit Reporting Act (FCRA) 15 USC 1681, to deny my application for a thirty thousand ($30,000) insurance bond. (See letter from insurance agent marked Exhibit A)

1

2. After receiving the letter from insurance agent, I exercised my FCRA right to request my file from the CRA named in the denial letter – namely Choicepoint. (See my letter to Choicepoint dated 7/29/10 marked Exhibit B)

3. In response to my request to Choicepoint, I received a letter dated July 20, 2010 from LexisNexis Risk Solutions, Inc., whereby they acknowledge that they are "a consumer reporting agency that collects, maintains and uses information to create consumer reports as that term is defined under the FCRA," yet in the next paragraph of the same letter they state that they are only a "reseller" of consumer reports and that they would not be sending me a copy of my file, but would be submitting my request to an entirely separate CRA known as Experian, Inc. (See attached letter marked Exhibit C)

4. I then received a 14 page report from Experian, Inc. instead of Choicepoint (or LexisNexis Risk Solutions, Inc.) dated 7/20/10. (See attached Exhibit I)

5. Confused as to why I received a letter from LexisNexis Risk Solutions, Inc. and not Choicepoint (the CRA named in the initial denial letter), I went online and discovered that Choicepoint, Inc. was purchased by

Reed Elsevier, Inc. in 2008, and Reed Elsevier is the parent company of LexisNexis Risk Solutions, Inc. (See attached Corporate Structure marked Exhibit D)

6. Unsatisfied with the response letter received from LexisNexis Risk Solutions, Inc. I again requested, by phone, a copy of my complete file from LexisNexis Risk Solutions, Inc., and in response received a letter from LexisNexis dated September 7, 2010, in which they flat out lie by stating that they only provided a "score" to Travelers and that they (again) would not be sending me a copy of my file (See attached letter marked Exhibit E) – basically asking me to accept the notion that they do not maintain files on consumers, even after admitting in their first response letter (Exhibit B) that they are in fact "a consumer reporting agency that collects, maintains and uses information to create consumer reports as that term is defined under the FCRA."

7. Upon further research, I discovered that LexisNexis's parent company, Reed Elsevier, Inc., has structured their organization with multiple subsidiaries and/or "products" that all use the same trademark and the name of LexisNexis, subsidiaries and products such as LexisNexis Accurint, LexisNexis Corporate and Professional, LexisNexis Personal

Reports, LexisNexis Risk View Solutions and LexisNexis KnowX , and I also learned that all of these products offered by Reed Elsevier, Inc. and LexisNexis Risk Solutions, Inc. are made available to insurance companies such as Travelers while in pursuit of background information pertaining to an individual as a result of an application for insurance, but LexisNexis Risk Solutions, Inc. does not make these same files available to consumers when they request their file, which is evident in this case (See attached web home pages of the aforementioned subsidiaries and "products' or 'brands" of LexisNexis marked Exhibit F).

8. After inquiring about LexisNexis "products," I discovered that LexisNexis selectively (and conveniently) labels some of their different "products" and subsidiaries as CRAs, but, for reasons which I can't explain, they do not consider others to be a CRA as defined by the FCRA. (For example see attached, at bottom of home page of LexisNexis Accurint, marked Exhibit G)

9. After realizing that LexisNexis is owned by Reed Elsevier, Inc. (Reed Elsevier), and after finding case law *(Varad v. Reed Elsevier, Inc., d/b/a LexisNexis, d/b/a LexisNexis Risk and Information Analytics Group, Inc.; US District of Massachusetts; civil action No. 06-11370-MLW)* in

Massachusetts that allowed a similar motion, I filed an Amended Complaint which has yet to be ruled on.

10. The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means of facility or interstate commerce for the purpose of preparing or furnishing consumer reports. *15 U.S.C. §1681, §609(f)*

11. In response to subpoena, Travelers sent me a copy of a two (2) page report that very clearly names Choicepoint (also known as LexisNexis Risk Solutions Inc.) as the Consumer Reporting Agency (CRA), rather than Experian, which proves that LexisNexis Risk Solutions, Inc. has willfully and deliberately lied more than once to this consumer by claiming they do not furnish reports or maintain files on individuals. (See attached Choicepoint report marked Exhibit H, and see attached Experian report marked Exhibit I)

12. The 2 page report that I was given by Travelers is different than the 14 page report that I was sent by Experian; for example one shows a lien

and the other does not, and one is two (2) pages while the other is fourteen (14) pages. (See Choicepoint report marked Exhibit H, and Experian report marked Exhibit I)

13. The two page report that Travelers sent me in response to subpoena shows nothing negative, yet my application was denied any way for reasons that are still unknown. (See Choicepoint report marked Exhibit H)

14. Recently, while talking over the phone to a sales representative at LexisNexis Risk Solutions, Inc. about their products and services (of which I recorded and have on tape), I was told that LexisNexis RiskView Solutions, which is provided by LexisNexis Risk Solutions Bureau LLC, takes dated information pertaining to an individual beginning from the time that person was eighteen (18) years old, information such as tax liens, arrest records, car wrecks, tickets, late utility payments and more, then calculates a new score, called the "RiskView" score, and then offers that score, along with the information used to create that score, to companies such as Travelers; however that score and information in the file is not made available to the consumer, and the consumer is not made aware that this service and transaction between LexisNexis Risk

Solutions, Inc. and the financial institution has been executed. (See attached web pages for info. on LexisNexis RiskView Solutions marked Exhibit F, p 6-11)

15. The FCRA states that Civil suits, civil judgments, records of arrest, paid tax liens, and accounts placed for collection or charged to profit and loss which antedate the report by more than seven (7) years, are not allowed to be used by Consumer Reporting Agencies (CRA). *15 U.S.C. §1681c, §605 (a)(1)(2)(3)(4)*

16. Defendant has refused to answer my Interrogatories, which forced me to file a Motion to Compel at the end of discovery that has yet to be ruled on.

## LEGAL ARGUMENT

By not disclosing their files to me, by not allowing me to dispute information in their files, and by the complex structuring of their organizations, LexisNexis Risk Solutions, Inc. has violated the FCRA in multiple instances:

1. **§ 603. Definitions; rules of construction** [15 U.S.C. § 1681a]

   (g) The term "file," when used in connection with information on any consumer, means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored.

2. **§ 605. Requirements relating to information contained in consumer reports** [15 U.S.C. §1681c]

   (a) *Information excluded from consumer reports.* Except as authorized under subsection of this section, no consumer reporting agency may make any consumer report containing any of the following items of information:

   (1) Cases under title 11 [United States Code] or under the Bankruptcy Act that, from the date of entry of the order for relief or the date of adjudication, as the case may be, antedate the report by more than 10 years.

   (2) Civil suits, civil judgments, and records of arrest that from date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period.

   (3) Paid tax liens which, from date of payment, antedate the report by more than seven years.

   (4) Accounts placed for collection or charged to profit and loss which antedate the report by more than seven years.

3. **The Fair Credit Reporting Act, § 609 Disclosures to Consumers [15 U.S.C. § 1681g] states:**

(a) *Information on file; sources; report recipients.* Every consumer reporting agency shall, upon request, and subject to 610(a)(1)[1681h], clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request.

   (1) All information in the consumer's file at thy time of the request
   (2) The sources of the information; except that the sources of information acquired solely for use in preparing an investigative consumer report and actually use for no other purpose need not be disclosed: Provided, That in the event an action is brought under this title, such sources shall be available to the plaintiff under appropriate discovery procedures in the court in which the action is brought
   (3) Identification of each person (including each end-user identified under section 607(e)(1) [§ 1681 e] that procured a consumer report
(b) *Exempt information.* The requirements of subsection (a) of this section respecting the disclosure of sources of information and the recipients of consumer reports do not apply to information received or consumer reports furnished prior to the effective date of this title except to the extent that the matter involved is contained in the files of the consumer reporting agency on that date.
(c) Summary of rights to Obtain and Dispute Information in Consumer Reports and to Obtain Credit Scores

(1) Commission Summary of Rights Required

    (A) *In General.* The Commission shall prepare a model summary of the rights of consumers under this title.
    (B) *Content of Summary.* The summary of rights prepared under subparagraph (A) shall include a description of –
- (i) The right of a consumer to obtain a copy of a consumer report under subsection (a) from each consumer reporting agency;
- (ii) The frequency and circumstances under which a consumer is entitled to receive a consumer report without charge under section 612;
- (iii) The right of a consumer to dispute information in the file of the consumer under section 611;
- (iv) The right of the consumer to obtain a credit score from a consumer reporting agency, and a description of how to obtain a credit score
- (v) The method by which a consumer can contact, and obtain a consumer report from, a consumer reporting agency without charge, as provided in the regulations of the Commission prescribed under section 211 (c0 of the Fair and Accurate Credit Transactions Act of 2003

## 4. 16 CFR 611.2 – General prohibition

TITLE 16 – COMMERCIAL PRACTICES
Subchapter F – THE FAIR CREDIT REPORTING ACT

PART 611 – PROHIBITION AGAINST CIRCUMVENTING TREATMENT AS A NATIONWIDE CONSUMER REPORTING AGENCY

611.2 – General Prohibition
(1)
    (a) A consumer reporting agency shall not circumvent or evade treatment as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis; as defined under section 603(p) of the Fair Credit Reporting Act, 15 U.S.C. 1681a(p), by any means, including, but not limited to: (1) Corporate organization, reorganization, structure, or restructuring, including merger, acquisition, dissolution, divestiture, or asset sale of a consumer reporting agency; or (2) Maintaining or merging public record and credit account information in a manner that is substantially equivalent to that described in paragraphs (1) and (2) of section 603(p) of the Fair Credit Reporting Act, 15 U.S.C. 1681a(p).

    (b) ***Examples: (1) Circumvention through reorganization by data type. XYZ Inc. is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It restructures its operations so that public record information is assembled and maintained only by its corporate affiliate, ABC Inc. XYZ continues operating as a consumer reporting agency but ceases to comply with the FCRA

obligations of a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, and thus violates this section.***

(2) Circumvention through reorganization by regional operations. PDQ Inc. is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It restructures its operations so that corporate affiliates separately assemble and maintain all information on consumers residing in each state. PDQ continues to operate as a consumer reporting agency but ceases to comply with the FCRA obligations of a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. PDQ's conduct is a circumvention or evasion of treatment as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, and thus violates this section.

(3) Circumvention by a newly formed entity. Smith Co. is a new entrant in the marketplace for consumer reports that bear on a consumer's credit worthiness, standing and capacity. Smith Co. organizes itself into two affiliated companies: Smith Credit Co. and Smith Public Records Co.

Smith Credit Co. assembles and maintains credit account information from persons who furnish that information regularly and in the ordinary course of business on consumers residing nationwide. Smith Public Records Co. assembles and maintains public record information on consumers nationwide. Neither Smith Co. nor its affiliated organizations comply with FCRA obligations of consumer reporting agencies that compile and maintain files on consumers on a nationwide basis. Smith Co.'s conduct is a circumvention or evasion of treatment as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, and thus violates this section.

## 5. § 616. Civil liability for willful noncompliance [15U.S.C. § 1681n]

(a) *In general.* Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

(1)
  (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
  (B) in the case of liability of a natural person for obtaining consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure of $1,000, whichever is greater

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

6. **§ 617. Civil liability for negligent noncompliance [ 15 U.S.C. § 1681o]**

   (a) *In general.* Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

   (1) Any actual damages sustained by the consumer as a result of the failure; and

   (2) In the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

   (b) *Attorney's fees.* On a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with and action under this section was filed in bad faith or for the purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

There is no genuine issue as to any material fact and Plaintiff is entitled to judgment as a matter of law.

The act of producing a consumer report imposes the burden of disclosing the complete file to the consumer if requested, as stated in the FCRA, and LexisNexis Risk Solutions, Inc. has willfully, deliberately, illegally and conveniently designed an illegal business model that enables them to act as a Consumer Reporting Agency but conveniently exempts them from the FCRA mandated obligation of disclosing their extensive files to consumers; nor do they allow consumers the FCRA mandated opportunity for consumers to dispute information contained in their extensive files, which is a second violation of the FCRA.

The General Prohibition listed above is very clear in this matter.

By law, the insurance company, in this case Travelers, is not obligated to give me reasons as to why they denied my application. They only have to disclose what CRA they used to get information. And when you have a company like Reed Elsevier, Inc and LexisNexis Risk Solutions, Inc. that have many different subsidiaries, products and "brands" that all provide various types of background information to insurance companies such as Travelers – some of which acknowledge they are a CRA and some of which do not – it becomes impossible for the consumer to figure out what is being reported about them. The burden of production falls on the CRA and Defendant has completely ignored and circumvented this burden.

The FCRA states that a CRA has thirty (30) days to disclose their file upon request from consumer. If an uninvolved entity like Experian were to not send out a copy of their file, would the consumer then take action against Experian? Of course not. For LexisNexis Risk Solutions, Inc. to just defer my file request to another entirely separate corporation, such as Experian, is laughable. Even if the reports are very similar, or identical for that matter, the reporting CRA is responsible for the production of the reports and files. LexisNexis Risk Solutions,

Inc. ignores this obligation on a daily basis and they are negatively affecting the lives of millions of Americans nationwide.

While the two page report I received from Travelers in response to my subpoena clearly supports my claim that LexisNexis Risk Solutions, Inc. does in fact maintain and distribute credit information, the report shows nothing negative at all, yet my application for insurance was denied. Therefore, I am left with the reasonable assumption that Travelers, while doing background research on me, probably accessed one of the many subsidiaries and products of LexisNexis Risk Solutions, Inc. and found dated, aged, negative information and thus denied my application. Once a company is in the LexisNexis Risk Solutions, Inc. computer system they can just click away and find whatever they want to pretty much, and unfortunately a while back I had some serious problems with collections agencies and credit card debt that at one point had ruined my credit, which is still haunting me, and the way LexisNexis Risk Solutions, Inc. 0 does business and is structured it looks as though I may be haunted by past credit issues indefinitely.

The FCRA imposes a duty upon CRA's, upon request, to disclose their files to the consumer to prevent the exact thing that occurred in this case. The

Defendant has gone to great lengths to design a complex business model that makes it impossible for a consumer to find out what is being reported on them.

Wherefore Plaintiff is entitled to summary judgment against LexisNexis Risk Solutions Inc. in the amount of $1000 statutory damages, and punitive damages in the amount $50,000 for the willful and deliberate violation of the FCRA.

If the court grants me this Motion for Summary Judgment, I will voluntarily withdraw my Motion to Amend naming Reed Elsevier, Inc. and LexisNexis Accurint as co-defendants and leave LexisNexis Risk Solutions, Inc. as sole defendant as they are pretty much all one in the same, and simply ask the court to allow me to amend and increase the amount of punitive damages to $50,000. However, if the court denies this Motion or is not ready to rule upon it, then I request a ruling on the Motion to Amend.

I ask the court to send a message to the defendant that their subversion, circumvention and manipulation of the Fair Credit Reporting Act will not go unpunished.

Respectfully submitted this 18th day of April, 2011.

_____
James F. Dinwiddie, Jr.
Pro Se
1838 Marsh Trail Circle
Atlanta, GA 30328
404-952-8549


State of Georgia
County of Fulton . . . SCT

Subscribed and sworn to before me by James F. Dinwiddie, Jr. this 18 day of April, 2011.

_____
Notary Public: State of GA
My Comm. Exp.: 2/1/13

## Certificate of Service

I do hereby certify that I have this 18th day of April, 2011 served a copy of the foregoing PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT upon Bret Hobson, attorney for Defendant, by mail (USPS) as follows:

> Bret Hobson
> Bondurant, Mixon & Elmore
> 3900 One Atlantic Center
> 1201 West Peachtree Street, N.W.
> Atlanta, GA 30309-3417

James F. Dinwiddie, Jr.